849 P.2d 107

**MAGIC VALLEY RADIOLOGY, P.A., a professional association and R. Dennis Davis, M.D., Plaintiffs–Appellants–Cross Respondents,**

v.

**Helen KOLOUCH, and the estate of Margaret Kolouch, Defendants–Respondents–Cross Appellants.**

No. 19722.

Supreme Court of Idaho,
Twin Falls, November 1992 Term.

March 15, 1993.

Hepworth, Nungester & Lezamiz, Twin Falls, for appellants-cross respondents. Eileen Ann McDevitt argued.

Webb, Pedersen & Webb, and Coleman, Ritchie & Robertson, Twin Falls, for respondents-cross appellants. Lloyd J. Webb argued.

JOHNSON, Justice.

In this case, a judgment creditor seeks to collect a judgment against a corporation from a stockholder and the estate of a deceased stockholder of the corporation. In resolving the issues presented, we address the application of I.C. § 15–3–803(a)(1) (limitation on presentation of claims against a decedent's estate), the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion), and the statutes of limitation contained in I.C. §§ 5–218(4) (actions for fraud) and 5–224 (actions for other relief).

### I.

### BACKGROUND AND PRIOR PROCEEDINGS.

In 1976, Professional Business Services, Inc. (PBS) began providing billing services to Magic Valley Radiology Associates, P.A. (Magic Valley). Helen Kolouch, her husband Fred, and her daughter Margaret (the Kolouchs) were PBS's only stockholders. Further background in which this case arose is found in two prior decisions of this Court: *Davis v. Professional Business Serv., Inc.*, 109 Idaho 810, 712 P.2d 511 (1985) (*Magic Valley I*) and *Magic Valley Radiology Assoc. v. Professional Business Serv., Inc.*, 119 Idaho 558, 808 P.2d 1303 (1991) (*Magic Valley II*).

In November 1989, while attempting to enforce the judgment entered against PBS following the remands from this Court in *Magic Valley I* and *II*, Magic Valley held a debtor's examination of Helen. At the time of the examination, Magic Valley discovered that PBS had no assets.

In 1991, Magic Valley commenced this action to collect the judgment from Helen individually, and due to Margaret's death in 1988, from Margaret's estate. Magic Valley alleged: (1) PBS was a sham organized for the purpose of creating a corporate shell by which Helen and Margaret could shield themselves from personal liability, and it would be unjust to not hold Helen and Margaret personally liable for the judgment (piercing the corporate veil); (2) Helen and Margaret transferred assets of PBS to themselves without adequate consideration (fraudulent transfers); (3) as a director of PBS, Helen assented to the distribution of corporate assets to herself and Margaret, or Margaret's estate, without making provisions to pay the judgment; and (4) Helen caused PBS to cease further business operations while she continued the same service for many of PBS's former clients.

Helen, for herself and as personal representative of Margaret's estate, denied all allegations of wrongdoing and asserted several affirmative defenses, including: (1) the four-month period of notice provided in I.C. § 15–3–803 within which claims against a deceased person's estate must be filed; (2) res judicata (claim preclusion); (3) collateral estoppel (issue preclusion); and (4) the statutes of limitations contained in I.C. §§ 5–218(4) and 5–224.

Helen moved for summary judgment, based on the affirmative defenses. Magic Valley moved for summary judgment, stating that there was no genuine issue of material fact concerning the affirmative de-

fenses. The parties stipulated to limit the summary judgment motions to issues of collateral estoppel (issue preclusion), res judicata (claim preclusion), and application of statutes of limitation.

The trial court ruled that the claim against Margaret's estate was based on a contract, and was barred because Magic Valley did not file its claim within the four-month period of notice provided in I.C. § 15–3–803(c)(1). The trial court also ruled that the doctrine of res judicata (claim preclusion) barred Magic Valley's claims, because the claims arose from the same transaction as Magic Valley's claims in *Magic Valley I* and should have been litigated there. Finally, the trial court ruled that Magic Valley's claims against Helen were barred by collateral estoppel (issue preclusion). Because of its rulings on these issues, the trial court did not reach the issues concerning I.C. §§ 5–218(4) and 5–224.

The trial court granted summary judgment dismissing Magic Valley's claims, and Magic Valley appealed.

## II.

PURSUANT TO I.C. § 15–3–803(a)(1), MARGARET'S ESTATE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING MAGIC VALLEY'S CLAIM TO PIERCE THE CORPORATE VEIL, BUT NOT MAGIC VALLEY'S CLAIM FOR FRAUDULENT TRANSFERS.

Magic Valley asserts that the trial court should not have dismissed the claims against Margaret's estate on the ground that Magic Valley failed to file a claim in Margaret's estate within four months after the publication of notice to creditors, as I.C. § 15–3–803(a)(1) provides. We disagree so far as the dismissal of the claim to pierce the corporate veil, but agree so far as the dismissal of the claim for fraudulent transfers.

I.C. § 15–3–803(a)(1) states that all claims founded in contract must be filed within four months of first publication of notice to creditors. Magic Valley's claim

against Margaret's estate based on piercing the corporate veil, in effect, seeks to hold Margaret's estate liable for the obligation upon which Magic Valley's judgment against PBS was based. As this Court's opinion in *Magic Valley I* reveals, the judgment against PBS was based on breach of contract. Because Magic Valley did not file a claim against Margaret's estate within four months after the publication of the notice to creditors, this claim is barred.

This claim is not saved by I.C. § 15–3–804(b), which provides that no claim need be filed in an estate when the matters claimed were pending in proceedings against the decedent at the time of death. Although Margaret was a defendant at the trial level in *Magic Valley I*, Magic Valley did not appeal the dismissal of the claim against Margaret. Margaret was not a party in *Magic Valley II*.

Magic Valley's other claim against Margaret's estate is based on fraudulent transfer of assets. This claim is not founded in contract, and the trial court should not have dismissed it under I.C. § 15–3–803(a)(1).

## III.

ONE OF MAGIC VALLEY'S CLAIMS IS BARRED BY RES JUDICATA (CLAIM PRECLUSION). THE OTHER CLAIMS ARE NOT BARRED BY EITHER RES JUDICATA (CLAIM PRECLUSION) OR COLLATERAL ESTOPPEL (ISSUE PRECLUSION).

Magic Valley asserts that its claims against Helen and Margaret are not barred by the doctrine of res judicata (claim preclusion) or collateral estoppel (issue preclusion). We agree that none of the claims are barred by collateral estoppel, and that only one of the claims is barred by res judicata (claim preclusion).

Recently, the Court has reaffirmed the basic statement of the doctrine of res judicata (claim preclusion) that has guided our courts for seventy years:

We think the correct rule to be that in an action between the same parties upon the

same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922) (quoted with approval in *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 614, 826 P.2d 1322, 1326 (1992) and *Diamond v. Farmers Ins.*, 119 Idaho 146, 148, 804 P.2d 319, 321 (1990)).

In affirming a summary judgment in *Diamond*, the Court traced the evolution of res judicata (claim preclusion) in this state since *Joyce*, and concluded:

We approve the Court of Appeals holding in *Aldape [v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983)] that a valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose.

*Diamond*, 119 Idaho at 150, 804 P.2d at 323.

In *Aldape*, the Court of Appeals pointed out:

[T]he transactional concept of a claim is broad, and ... the bar of claim preclusion is similarly broad ...

... [T]he bar of claim preclusion may apply even where there is not a substantial overlap between the theories advanced in support of a claim, or in the evidence relating to those theories.

105 Idaho at 259, 668 P.2d at 135.

In *Diamond*, the Court employed the analysis used by the Court of Appeals in *Aldape* and the Restatement (Second) of Judgments § 24 (1982), to determine whether the second action sought remedies with respect to all or any part of the transaction out of which the first action arose. 119 Idaho at 151, 804 P.2d at 324. In *Aldape*, the Court of Appeals quoted the test from Restatement (Second) of Judgments § 24 (1982):

"What factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

105 Idaho at 259, 668 P.2d at 135.

In formulating the application of res judicata (claim preclusion) to two successive fraud claims, the Court in *Kawai Farms* concluded that before summary judgment may be granted, the Court must decide whether more than one conclusion can be reached from the evidence whether the claimant exercised due diligence to discover in the prior action the fraud that is the subject of the subsequent action. *Kawai Farms*, 121 Idaho at 614, 826 P.2d at 1326.

Applying these concepts of res judicata (claim preclusion) to this case, the first question we must address is whether the claims asserted by Magic Valley against Helen and Margaret's estate in this case arose out of the same transaction or series of transactions that gave rise to the action in *Magic Valley I*. If so, in considering the effect of claim preclusion on the fraudulent transfer claims, we must also address whether Magic Valley exercised due diligence in *Magic Valley I* to discover the fraud alleged in this case.

Among its claims in *Magic Valley I*, Magic Valley sought to recover from Helen and Margaret individually, based on their personal conduct. Magic Valley also sought, in the alternative, to recover from PBS, if the conduct of Helen and Margaret was performed on behalf of PBS or its predecessor. Helen and Margaret moved for summary judgment on the ground that they were not parties to any agreements upon which Magic Valley based its claims and had taken no actions which would subject them to individual liability as to any of the claims. In opposition to this motion for summary judgment, Dr. Davis, one of the principals in Magic Valley submitted an affidavit in which he stated:

At no time after the Kolouchs began doing our billing services did I or any of

the other radiologists agree to substitute Professional Business Services, Inc. in place of the entity with which we had originally contracted for billing services. This topic quite simply never came up. Had the Kolouchs approached us about the possibility of substituting a *corporate entity, which very likely would have been an empty shell without substantial assets*, in place of the Kolouch family, we would have had to investigate such a legal change very carefully before agreeing to it. No such agreement was ever made by myself or the other radiologists. (Emphasis added.)

In answers to interrogatories in *Magic Valley I*, Magic Valley stated that the principals of Magic Valley felt they had a contract for personal services with the individual Kolouchs, not PBS.

At trial in *Magic Valley I*, Dr. Davis testified that Magic Valley was dealing with the Kolouchs and not with any corporate entity. Following the trial court's decision in *Magic Valley I* holding PBS, but not Helen or Margaret, liable to Magic Valley, Magic Valley moved to amend the decision to allow Magic Valley to recover against Helen and Margaret individually, based on "their tortious activity." In arguing this motion, counsel for Magic Valley said that Helen intended to and did harm Magic Valley and its principals, "[a]nd she cannot be held to hide behind this corporate veil." The trial court then amended its decision to hold Helen, but not Margaret, individually liable to Magic Valley for her torts.

In its brief on appeal in *Magic Valley I*, Magic Valley argued that Dr. Davis and the other principals of Magic Valley "never agreed to substitute any of the other Kolouch business entities for the Kolouchs themselves in terms of financial responsibility and in terms of whom the doctors were relying upon for performance of the agreement."

In *Magic Valley I*, this Court stated:

All things considered, we view the trial court's characterization of [Magic Valley's] claim as one sounding in contract. Hence, judgment entered against Helen Kolouch, president of [PBS], for the reconstruction costs must be reversed, for an officer of a corporation is not liable for a breach of a contract made in the corporation's name unless it can be shown that the "corporate veil should be pierced to avoid unjust consequences inconsistent with the corporation concept." Here, there is no evidence to support piercing the corporate veil; thus, we adhere to the general rule stated above and reverse the district court's judgment entered against Helen Kolouch.

109 Idaho at 815, 712 P.2d at 516 (citations omitted).

The transaction that was the subject of *Magic Valley I* was the contractual arrangement by which the Kolouchs and PBS did billing for Magic Valley. As theories for recovering against the Kolouchs and PBS, Magic Valley and its principals alleged: (1) breach by the Kolouchs and PBS of contracts they had with Magic Valley, and (2) tortious conduct by Helen and Margaret toward Magic Valley. *Magic Valley II* concerned issues of damages, attorney fees, and the status of security posted on appeal growing out of *Magic Valley I*.

A. THE CLAIM TO PIERCE THE CORPORATE VEIL IS BARRED.

In this case, in its first claim, Magic Valley seeks to hold Helen and Margaret's estate liable for the judgment entered against PBS by piercing the corporate veil. This claim is premised on the allegations that Helen and Margaret created PBS as a sham to shield themselves from any liability to Magic Valley, that Helen and Margaret intentionally undercapitalized PBS, and that PBS was the alter ego of Helen and Margaret. This claim arose out of the same transaction that was the basis for Magic Valley's action in *Magic Valley I* and *II*—the liability of Helen and Margaret personally for the breach of the contractual arrangement to bill for Magic Valley's services. Although the theory of this liability and the evidence necessary to prove the liability are different here than they were in *Magic Valley I* and *II*, the transaction is the same. Therefore, this claim against

Helen and Margaret's estate is barred by res judicata (claim preclusion).

Construed narrowly, *Kawai Farms* applies only where a party makes successive claims for fraud. Arguably the decision there could apply to all cases in which res judicata (claim preclusion) is an issue. Even applying the analysis employed by the Court in *Kawai Farms* to Magic Valley's claim to pierce the corporate veil, however, the testimony of Dr. Davis, the comments of Magic Valley's counsel, and the contents of Magic Valley's brief on appeal, noted above, all indicate that Magic Valley was on notice in *Magic Valley I* that there might be a basis to pierce the corporate veil of PBS to hold the Kolouchs liable. We can reach only one conclusion: Magic Valley did not exercise due diligence to discover its claim to pierce the corporate veil.

### B. THE TRIAL COURT SHOULD NOT HAVE DISMISSED THE OTHER CLAIMS.

█ In its second claim, Magic Valley alleges that Helen and Margaret fraudulently transferred to themselves assets of PBS without adequate consideration at a time when PBS owed a legal obligation to Magic Valley and seeks to recover the value of the transferred assets.

In its third claim, Magic Valley seeks to hold Helen liable for the judgment against PBS on the ground that as a director of PBS Helen assented to the distribution of corporate assets to herself and Margaret or Margaret's estate without making adequate provision for payment of the judgment and that as statutory trustee of the remaining assets of PBS after PBS's corporate charter was forfeited, Helen failed to use corporate assets to pay the judgment.

In its fourth claim, Magic Valley seeks to hold Helen liable for the judgment against PBS on the ground that after Margaret's death, Helen continued to operate the business of PBS as her sole proprietorship.

None of these claims arise out of the transaction that was the subject of *Magic Valley I* and *II*. These claims address transactions that are alleged to have occurred after the alleged breach of the contractual arrangement that was the subject of the first case. Also, applying *Kawai Farms* to these claims, we could reach more than one conclusion whether by an exercise of due diligence Magic Valley could have discovered the basis for these claims. Therefore, the trial court should not have dismissed the other claims on the ground they were barred by res judicata (claim preclusion).

### C. COLLATERAL ESTOPPEL (ISSUE PRECLUSION) DOES NOT APPLY.

█ The trial court also dismissed the claims against Helen as barred by collateral estoppel (issue preclusion). This doctrine prevents the relitigation of issues actually litigated and decided in a prior case. In *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987), the Court stated that the appropriate test for whether collateral estoppel should apply includes the following:

(1) Did the party "against whom the earlier decision is asserted ... have a 'full and fair opportunity to litigate that issue in the earlier case?'" (2) Was the issue decided in the prior litigation "identical with the one presented in the action in question?" (3) Was the issue actually decided in the prior litigation? This may be dependent on whether deciding the issue was "necessary to [the prior] judgment." (4) "Was there a final judgment on the merits?" (5) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Id.* at 183–84, 731 P.2d at 178–79 (citations omitted).

Regardless of the answers given to the other questions that are listed in *Anderson*, it is clear that the issues raised by Magic Valley's claims for fraudulent transfers, for director liability, and for continuation of business, were not decided in the prior case. That case was focused on the conduct of PBS and the Kolouchs in breaching the contractual arrangement for providing billing services to Magic Valley.

**440**

Therefore, collateral estoppel (issue preclusion) does not bar these claims.

## IV.

### THE STATUTES OF LIMITATIONS DO NOT BAR MAGIC VALLEY'S CLAIMS FOR FRAUDULENT TRANSFERS, DIRECTOR LIABILITY, AND CONTINUATION OF BUSINESS.

Helen and Margaret's estate assert that the statutes of limitations contained in I.C. §§ 5–218(4) and 5–224 bar Magic Valley's claims. We disagree.

Because res judicata (claim preclusion) bars Magic Valley's claim to pierce the corporate veil, we examine the application of the statutes of limitations pleaded by Helen and Margaret's estate to the remaining three claims only.

I.C. § 5–218(4) provides that an action for relief on the ground of fraud must be brought within three years, and that the action is "not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." The record here indicates that Magic Valley did not discover the facts that it alleges constitute fraudulent transfers until Helen was submitted to a debtor's examination on November 30, 1989. This action was filed on March 20, 1991. Therefore, the statute does not bar this claim.

While Helen and Margaret's estate do not specify whether they contend that I.C. §§ 5–218(4) or 5–224 apply to bar the claims for director liability and continuation of business, neither statute bars the claims. If I.C. § 5–218(4) applies to these claims, again the only evidence in the record indicates that Magic Valley discovered the basis for these claims at the time of the debtor's examination.

I.C. § 5–224 provides a four-year statute of limitations. Concerning the claim for director liability, two dates establish the accrual of the claim. The first is the date when Helen assented to the distribution of corporate assets to herself and Margaret or Margaret's estate. The second is November 1, 1989, which is the date Magic Valley alleges that Helen became a statutory trustee for the benefit of PBS's creditors. This action is clearly timely as to the second date.

As to the first date, the debtor's examination is the only source of information in the record. According to Helen's testimony there, a vehicle owned by PBS and used by Margaret was included on the depreciation schedule of PBS in its tax returns at least as late as 1986. Helen testified that Margaret may have turned this vehicle in on another vehicle that was leased, which she was still driving when she died in 1988. Whether this second vehicle was leased by Margaret personally or by PBS is not clear from the record. There is no other information in the record about when any other property belonging to PBS may have been distributed to Helen or Margaret. Therefore, there is no basis to apply I.C. § 5–224 to bar these claims.

## V.

### CONCLUSION.

We affirm the trial court's dismissal of Magic Valley's claim against Helen and Margaret's estate to pierce the corporate veil. We vacate the trial court's dismissal of Magic Valley's other claims, and remand the case for further proceedings.

Because of the mixed results in this appeal, we award no costs on appeal. We award no attorney fees on appeal.

BISTLINE and TROUT, JJ., and BAKES, J., Pro Tem. (following retirement on February 1, 1993), and TRANSTRUM, J., Pro Tem., concur.