903 P.2d 147

**David DURRANT, d/b/a Big D Ranch, Plaintiff–Respondent,**

v.

**QUALITY FIRST MARKETING, INC., and Ignazio Ugenti, Defendant–Appellant.**

**No. 21516.**

Court of Appeals of Idaho.

Sept. 20, 1995.

Brown & Edwards, Cht., Boise, for appellant. John T. Edwards argued.

Hamlin & Sasser, Boise, for respondent. Ronald D. Christian argued.

WALTERS, Chief Judge.

Ignazio Ugenti, the sole director, shareholder and employee of Quality First Marketing (QFM), and QFM appeal from a district court order denying Ugenti's "motion for directed verdict" based on the doctrine of res judicata in an action to pierce QFM's corporate veil.[1] For the reasons explained below, we affirm.

---

1. The briefs submitted by the appellants list both Ugenti and QFM as appellants. In light of our

## FACTS AND PROCEDURAL BACKGROUND

In May 1991, Ignazio Ugenti contacted David Durrant, and requested that Durrant sell pinto beans to QFM. Durrant subsequently sold one truck load of beans to QFM and was paid for that load. He then sold four more truck loads of beans to QFM, worth approximately $30,000, for which he was never paid.

In November 1991, Durrant sued QFM to collect the money owed for the beans, and obtained a default judgment based on QFM's failure to answer the complaint. QFM moved to set aside the default judgment. The motion was denied, and Durrant then converted the Idaho judgment against QFM to a judgment in the state of California. QFM filed a motion with the California court to vacate the judgment and, following a hearing, the motion was denied.

Durrant subsequently filed a second action in Idaho against both QFM and Ugenti, attempting to pierce the corporate veil to hold Ugenti, as the sole director, shareholder and employee of QFM, individually liable. The amended complaint also alleged three claims sounding in fraud. The case proceeded to a court trial on June 29, 1994, and at the end of Durrant's case-in-chief Ugenti moved for a "directed verdict," claiming that the doctrine of res judicata barred Durrant from seeking to pierce the corporate veil. Ugenti also moved for a directed verdict on Durrant's claims of fraud.

On July 11, 1994, the district court entered its order regarding Ugenti's motions for directed verdict, denying Ugenti's motion based on res judicata and granting Ugenti's motion with respect to Durrant's fraud claims. The court also granted Durrant's request to pierce the corporate veil, and entered judgment against Ugenti for the amount of the prior judgment rendered against QFM. Ugenti appeals, contending that the court erred in denying his motion for directed verdict based on the theory of res judicata because Durrant should have brought his claims against Ugenti in his first action against QFM.

## I. ANALYSIS

### A. Standard of Review

Ugenti argues that the district court erred in denying his motion for directed verdict because the doctrine of res judicata barred Durrant's action against him. At the outset, we note that because this was a court trial rather than a trial by jury, the proper motion was one for involuntary dismissal, I.R.C.P. 41(b), not a motion for a directed verdict under I.R.C.P. 50(a). Cf. *Blackburn v. Boise School Bus Co.*, 95 Idaho 323, 324, 508 P.2d 553, 554 (1973). We therefore treat the district court's ruling as a denial of a motion for involuntary dismissal.

We also note that Ugenti did not provide us with those portions of the trial transcript which would indicate whether he presented evidence on the res judicata defense during his case-in-chief.[2] Therefore,

decision in this case, we refer to the appellants in the singular as Ugenti.

2. The plea of res judicata is an affirmative defense and the burden rests on the party asserting it to establish all of the essential elements thereof by a preponderance of the evidence. *Foster v. City of St. Anthony*, 122 Idaho 883, 890, 841 P.2d 413, 420 (1992). It appears from the record, however, that Ugenti never intended to argue res judicata as an affirmative defense at the June 29, 1994, court trial. During his case-in-chief, Durrant's attorney attempted to elicit testimony from Durrant regarding a conversation between Ugenti and Durrant which took place following the first suit against QFM in which Durrant discovered that QFM had no assets and that there might be a basis for piercing the corporate veil. Ugenti objected to this testimony and after the court

overruled the objection, the following colloquy occurred:

[ATTORNEY FOR DURRANT]: Your Honor, just having won on our offer of proof, this may seem a little odd. But the plaintiff would be willing to not go into that particular conversation in exchange for a simple stipulation.

Our purpose in entering into this is not necessarily to prove the assets of the corporation. We can do that from the documentation we have here today.

Our purpose in doing that is to avoid a potential problem from a case that is called, I think, Magic Valley Radiology, which basically said if you sued to pierce the corporate veil, or if you failed to sue to pierce the corporate veil at the time you sued the corporation, and you had a reasonable basis to do so, you are estopped from doing so later.

we do not review whether the district court erred in ruling against Ugenti at the conclusion of the trial. Rather, our review is limited to whether the district court erred in denying Ugenti's motion for involuntary dismissal.

■ Upon a final judgment, the denial of a motion for involuntary dismissal is appealable. *Miller Constr. Co. v. Stresstek, A Div. of L.R. Yegge,* 108 Idaho 187, 191, 697 P.2d 1201, 1205 (Ct.App.1985); *see also* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2376 at 420 (1995). Upon appeal of a denial of the defendant's motion for involuntary dismissal, the reviewing court must view all of the plaintiff's evidence as being true and afford every inference favorable to the plaintiff that legitimately may be drawn from such evidence. *Miller, supra.*

## B. Res Judicata

■ Res judicata prevents the litigation of causes of action which were finally decided in a previous suit. *Gubler v. Brydon,* 125 Idaho 107, 110, 867 P.2d 981, 984 (1994). As a general proposition, res judicata prevents litigants who were parties in a prior action and those in privity with them from bringing or having to defend a claim arising from the transaction or series of transactions giving rise to the first suit. *Id.* " '[I]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.' " *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 614, 826 P.2d 1322, 1326 (1992), *quoting Joyce v. Mur-*

*phy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242–43 (1922).

■ In support of his assertion that Durrant's action to pierce the corporate veil is barred by res judicata, Ugenti relies on *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 849 P.2d 107 (1993). In *Magic Valley,* our Supreme Court held that res judicata barred a plaintiff's claim seeking to pierce the corporate veil so as to make a shareholder and the estate of another shareholder liable for judgment entered against a corporation. 123 Idaho at 438–39, 849 P.2d at 111–12. The Court's decision was predicated on the fact that the judgment entered in the previous litigation involved the same underlying transaction and that the plaintiff was "on notice" of a basis to pierce the corporate veil, but did not "exercise due diligence to discover its claim to pierce the corporate veil." *Id.* at 439, 849 P.2d at 112.

*Magic Valley* is distinguishable from the instant case on two grounds. First, in *Magic Valley,* the defendants in the second suit were also named defendants in the prior suit, whereas in the present action, Ugenti was not named as a party in Durrant's prior suit against QFM. Because the two actions were not between the same parties or their privies, *Gubler,* 125 Idaho at 110, 867 P.2d at 984, the doctrine of res judicata is inapplicable. *See also, McLean v. Smith,* 593 So.2d 422 (La.Ct. App.1991).

*Magic Valley* is also distinguishable because, unlike *Magic Valley,* in this case there was substantial evidence indicating that Durrant was not on notice of a basis to pierce the corporate veil at the time he brought his initial action against QFM. At the court trial, Durrant testified that before contract-

---

We are simply trying to establish that we had no idea we were estopped [sic] until long after we sued the corporation. And if we can receive a stipulation from the other side to that effect to avoid the Magic Valley ruling, we'll pass on.

THE COURT: Care to so stipulate?

[UGENTI'S ATTORNEY]: Your Honor, *I'm not familiar—it's an Idaho case, and I'm not familiar with its ruling.* I can't give you a stipulation at this point.

(emphasis added). At the close of Durrant's case, counsel for Ugenti then moved for directed verdict, not only on Durrant's fraud claims, but also on the basis that res judicata barred Durrant's claim to pierce the corporate veil. Ugenti's attorney prefaced his argument for directed verdict on this latter claim as follows: "I was made aware of a case, and it was not just here in court; it was previous. It was Magic Valley Radiology, P.A., versus Kolouch [123 Idaho 434, 849 P.2d 107 (1993)]."

ing with QFM he requested credit references and upon checking with a reference, Triangle Bean Company, was told that its experience with QFM had been positive. Durrant also looked up QFM in the *Produce Reporter* (the Reporter), a book commonly used by businesses in the produce industry to advertise and to obtain information about other businesses. Based on the information in the Reporter regarding QFM, Durrant believed that QFM was a "good credit risk" and that it was able to pay its bills. Durrant knew from prior experience with the Reporter that it predicates its credit ratings and capitalization reports on financial statements of its advertisers and on separate credit references. Durrant testified that he knew what a corporation was and understood, based on the Reporter, that he was "dealing with a corporation" when he entered into a contract with QFM.

We also note that had Durrant been provided the opportunity for discovery in the first case against QFM, he might have discovered that QFM was a sham corporation. However, Durrant never had the opportunity to conduct discovery because QFM failed to appear in the action or to answer the complaint, and Durrant took default judgment.

The transcript reveals that it was not until several months after default judgment was entered against QFM, while Durrant was attempting to enforce the judgment against QFM in California, that he had the opportunity to learn about the ownership and true capitalization of QFM. Ugenti, Durrant and their respective attorneys met at least twice in the courthouse hallway during the hearings in California on QFM's motion to vacate the judgment against it. During the second meeting, Durrant's attorney asked several questions of Ugenti regarding the capitalization, assets and management of QFM. It was based on the information gleaned during this conversation that Durrant was first put on notice of a basis to pierce the corporate veil.

Ugenti and Durrant disagree as to what constitutes "due diligence" and the degree of knowledge regarding a potential claim necessary to trigger a party's duty to discover that

claim and raise it in the first action. Ugenti supports his argument that Durrant was "on notice" that QFM was a sham corporation with the following facts presented at trial. First, Durrant testified that at the time he conducted business with QFM, he had "suspicions" that QFM was a "one-man show." Second, at that time, Durrant believed that corporate officers were responsible for the debts incurred by their corporation. Third, Durrant testified that all of his dealings with QFM were conducted through Ugenti, and that Ugenti "personally agreed to the terms that were stipulated in the confirmation" of sale. Fourth, Durrant testified that he "felt [he] was dealing with [Ugenti] because he's the only one [Durrant] ever talked to." Ugenti argues that based on the foregoing, Durrant "knew Ugenti *might be the alter ego* of QFM, prior to the time his initial complaint was filed" (emphasis added). However, it is not enough that a party knows it *might* have a basis to sue to pierce the corporate veil at the time it brings an action against a corporation. Any time a party conducts business with a closely held corporation, that party is aware that the corporate principal with whom the party deals *might* be the alter ego of that corporation. Such knowledge is insufficient, however, for res judicata to bar that party from bringing a subsequent action to pierce the corporate veil.

Indeed, had Durrant brought suit to pierce the corporate veil in the first action, he might well have been in violation of the requirement in I.R.C.P. 11 that a pleading be well-grounded in fact and warranted in law. Under the standards set forth in Rule 11, mere "suspicion," "without factual foundation" is not a sufficient basis to sue an individual. *Durrant v. Christensen*, 117 Idaho 70, 74, 785 P.2d 634, 638 (1990), *citing Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).

Interpreting the evidence in a light most favorable to Durrant, we conclude that Durrant did not have notice of a claim to pierce the corporate veil at the time he brought his initial action against QFM. Therefore, the district court properly rejected Ugenti's argument that, as a matter of law, res judicata barred Durrant's action to pierce the corpo-

rate veil. Thus, we hold that the court did not err in denying Ugenti's motion for directed verdict, when treated as a motion for involuntary dismissal.

## II. CONCLUSION

We conclude that there was substantial evidence indicating that Durrant was not on notice of a claim to pierce the corporate veil at the time he sued QFM. Accordingly, we affirm the district court's order denying Ugenti's motion at the conclusion of the plaintiff's case-in-chief.

Costs and attorney fees on appeal are awarded to respondent, David Durrant, pursuant to I.A.R. 40 and I.C. § 12–120(3).

LANSING and PERRY, JJ., **CONCUR.**