## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 32649

| | |
|---|---|
| TICOR TITLE COMPANY, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) Boise, February 2007 Term |
| | ) |
| v. | ) 2007 Opinion No. 44 |
| | ) |
| RICHARD W. STANION, II, | ) Filed: March 21, 2007 |
| | ) |
| Defendant-Respondent. | ) Stephen W. Kenyon, Clerk |
| | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Honorable Kathryn A. Sticklen, District Judge.

District court order granting summary judgment, <u>affirmed.</u>

Preston, Gates & Ellis, Coeur d'Alene, for appellant. Peter Guillum Scott argued.

Murphy Law Office, P.L.L.C., Meridian, for respondent. Michaelina B. Murphy argued.

---

BURDICK, Justice

This case asks us to decide whether a title company that was the escrow agent for the sale of land pursuant to a bankruptcy court order is now prevented from bringing a claim against the bankrupt on grounds of *res judicata*. This case also asks us to determine whether there is an issue of material fact precluding summary judgment and whether either party is entitled to attorney fees.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent, Richard W. Stanion II, filed a Chapter 13 bankruptcy petition in Nevada in October 2003. On June 17, 2004, Stanion entered into a contract with Tracy and Ryan Smith in which he promised to sell a piece of real estate. That agreement states the closing was to occur on August 16, 2004, and contains a receipt showing that the buyer paid $5,000 in earnest money to Ticor Title. On July 3, 2004, Stanion's real estate

1

agent prepared a document showing that Stanion's estimated net proceeds of the sale would be $151,093.00.

On August 4, 2004, the bankruptcy court ordered the sale of Stanion's property. That order instructed the title company handling the sale, which was not named in the order, to pay $650.00 to Stanion's attorney, $36,438.62 to the trustee, and the remainder of the sale proceeds, estimated to be $151,093.00, to Stanion.[1] A loan settlement statement shows Stanion's actual net proceeds from the sale were $124,871.19. Ticor distributed the entire sale proceeds, $124,871.19, to Stanion, including the $36,438.62 that should have gone to the bankruptcy trustee.

On January 6, 2005, the bankruptcy trustee sent Stanion a notice of default for failure to make payments according to his Chapter 13 plan. As a result of receiving the notice of default, Stanion realized that Ticor did not pay the trustee the $36,438.62. Thus, in December 2004 Stanion sent Ticor a demand letter. Ticor responded by sending a fax stating that it would refer Stanion's claim to Ticor's claim department.

On February 1, 2005, Stanion moved the bankruptcy court to order Ticor to disburse the required amount to the bankruptcy trustee and to show cause why Ticor should not be subject to sanctions. A hearing on this motion was held March 11, 2005, which resulted in the court ordering Ticor to turn over funds to the trustee and setting a hearing for April 7, 2005, on the sanctions and attorney fees. On March 23, 2005, Stanion moved to show cause why Ticor should not be sanctioned for its failure to appear at the March 11, 2005, hearing. The hearing on the March 23, 2005 motion was also to take place on April 7, 2005. The hearing date was then amended to April 27, 2005. Ticor issued a check to the bankruptcy trustee for the required amount on April 21, 2005. Counsel for Ticor appeared at the final hearing on this matter on April 27, 2005, and the bankruptcy court then entered an order finding that Ticor was in compliance with the court order and that the matter was settled.

---

[1] Since the July 2004 Closing Cost Analysis estimated Stanion's net proceeds would be $151,093.00, it appears the order's estimation of Stanion's portion did not take into account the payment to the trustee and Stanion's attorney.

Ticor subsequently brought this suit against Stanion claiming Stanion was unjustly enriched by his retention of $36,438.62. The district court held that Ticor's claim is barred by *res judicata*. Ticor timely appeals the order.

## II. STANDARD OF REVIEW

When reviewing a district court's grant of summary judgment, we use the same standard a district court uses when it rules on a summary judgment motion.[2] *Jordan v. Beeks*, 135 Idaho 586, 589, 21 P.3d 908, 912 (2001). Summary judgment shall be rendered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All facts are viewed in the light most favorable to the nonmoving party. *R.G. Nelson, A.I.A. v. Steer*, 118 Idaho 409, 410, 797 P.2d 117, 118 (1990).

Whether claim preclusion or issue preclusion bars relitigation between the same parties of a prior litigation is a question of law upon which this Court exercises free review. *Lohman v. Flynn*, 139 Idaho 312, 319, 78 P.3d 379, 386 (2003). *Res judicata* is an affirmative defense and the party asserting it must prove all of the essential elements by a preponderance of the evidence. *Foster v. City of St. Anthony*, 122 Idaho 883, 890, 841 P.2d 413, 420 (1992).

## III. ANALYSIS

Ticor argues that there are disputed issues of material fact, that its claim is not barred by *res judicata* and that it should be awarded attorney's fees. We will address each argument in turn.

### A. Disputed Issues of Material Fact

Ticor asserts that the district court's holding assumes facts in dispute and thus cannot be upheld under the summary judgment standard. Specifically, Ticor argues that the district court's ruling assumes that when Ticor paid the $36,438.62 to the bankruptcy trustee it knew Stanion had managed to wrongfully obtain the settlement proceeds.

---

[2] Stanion actually made a motion to dismiss the case under I.R.C.P. 12(b)(1) (lack of subject matter jurisdiction). However, the district court determined that Stanion's motion to dismiss was effectively a motion to dismiss under I.R.C.P. 12(b)(6) (failure to state a claim upon which relief can be granted). Since the motion presented matters outside the pleadings, the court treated the motion as one for summary judgment pursuant to I.R.C.P. 12(b).

However, the district court's opinion does not indicate it made any such assumption. Furthermore, whether or not Ticor realized it had already given the $36,438.62 to Stanion when it paid the bankruptcy trustee does not affect the outcome of this case. *Res judicata* will apply if Ticor's claim was or should have been litigated during the bankruptcy proceeding, *see infra* Part III.B.2.b; Ticor's claim is not affected by its failure to realize it had a claim or argument that should have been presented to the bankruptcy court.

Ticor also asserts that the district court independently investigated disputed issues of material fact. However, Ticor fails to point to any part of the opinion revealing the district court made such an investigation or that it based its opinion on such an investigation. Ticor's assertion is supported only by the district court's statement made in the hearing that it would look through the bankruptcy records attached to affidavits in order to determine when and if Ticor received notice of certain motions. Ticor has failed to point to any part of the district court's opinion which indicates it improperly relied on documents not in the record or stricken from the record. As the record shows no disputed issue of material fact, we will affirm if Stanion is entitled to summary judgment as a matter of law.

## B. *Res Judicata*

The doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel). *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Claim preclusion bars a subsequent action between the same parties upon the same claim or upon claims "relating to the same cause of action . . . which might have been made." *Id*. Issue preclusion protects litigants from litigating an identical issue with the same party or its privy. *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001). Separate tests are used to determine whether claim preclusion or issue preclusion applies. *See D.A.R., Inc. v. Sheffer*, 134 Idaho 141, 144, 997 P.2d 602, 605 (2000). *Res judicata* serves three fundamental purposes: (1) it preserves the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results; (2) it serves the public interest in protecting the courts against the burdens of repetitious litigation; and (3) it advances the private interest in repose from the harassment of

repetitive claims. *Hindmarsh*, 138 Idaho at 94, 57 P.3d at 805 (quoting *Aldape v. Atkins*, 105 Idaho 254, 257, 668 P.2d 130, 133 (Ct. App. 1983)).

Ticor centers its original argument around the elements for issue preclusion. Stanion argues that it is not necessary to meet all of the elements for issue preclusion, since the case is barred by claim preclusion. Ticor responds that it does not matter because its case is not barred by either issue preclusion or claim preclusion.[3]

Ticor uses the issue preclusion elements for its discussion but fails to distinguish them as issue preclusion elements and assumes those elements apply to the doctrine of *res judicata*, which includes both claim preclusion and issue preclusion. However, the elements Ticor discussed are only used for issue preclusion and do not apply to claim preclusion.[4] *See D.A.R., Inc.*, 134 Idaho at 144, 997 P.2d at 605 (using different tests for issue preclusion and claim preclusion). Nonetheless, because Ticor argues that neither issue preclusion nor claim preclusion applies, we will analyze each theory as it applies to this case below.

1. Issue Preclusion

Ticor argues that its case is not barred by issue preclusion. Issue preclusion protects litigants from having to relitigate an identical issue in a subsequent action. *Rodriguez*, 136 Idaho at 92, 29 P.3d at 403. Five factors are required in order for issue preclusion to bar the relitigation of an issue determined in a prior proceeding: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to

---

[3] Ticor also argues that *Ralls v. Fouraker*, 109 Idaho 488, 708 P.2d 893 (1985), stands for the proposition that a bankrupt who perpetrates a fraud on the court may not rely on *res judicata* to defend a subsequent action. However, *res judicata* is not discussed in that opinion, and is merely mentioned as one of Fouraker's defenses. *Id*. at 490-91, 708 P.2d at 895-96. Furthermore, the Court pointed out that there was no showing that Ileda Fouraker was ever discharged as a bankrupt. *Id*. at 491, 708 P.2d at 896. The decision in that case was not based on *res judicata*, but was based on whether the bankruptcy trustee acquired title to property as a third party bona fide purchaser. Thus, Ticor's argument is not supported by the case cited and no Idaho law supports Ticor's assertion. On the other hand, when faced with the situation where a creditor involved in a bankruptcy proceeding acted fraudulently, this Court has held that such a creditor may still defend itself with a the doctrine of *res judicata* when the party alleging the fraud, also a creditor, had notice of the actions taken in the bankruptcy court and should have exercised due diligence in discovering the nature of the creditor's actions in the bankruptcy court. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 70, 878 P.2d 762, 769 (1994).

[4] Ticor cites to *Union Pacific Land Resources Corp. v. Shoshone County Assessor*, 140 Idaho 528, 96 P.3d 629 (2004), for support that those elements apply to both issue preclusion and claim preclusion. However, that case is analyzing an issue preclusion claim: whether or not the specific issue of Tax Commission's classification of certain property had previously been litigated. *Id*. at 534, 96 P.3d at 635. Thus, that case

5

litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Rodriguez*, 136 Idaho at 93, 29 P.3d at 404.

Issue preclusion cannot be used to bar Ticor's suit in this case. The issue of whether Stanion was unjustly enriched by his receipt and retention of the trustee's share of the sale proceeds were not actually litigated nor decided by the bankruptcy court. Thus, we hold Ticor's claim is not barred by issue preclusion.

2. Claim Preclusion

For claim preclusion to bar a subsequent action there are three requirements: (1) same parties; (2) same claim; and (3) final judgment. *Hindmarsh*, 138 Idaho at 94, 57 P.3d at 805; *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 68, 878 P.2d 762, 767 (1994). Ticor argues that no element of claim preclusion has been met in this case. We will discuss each element in turn.

*a. Same Parties*

Ticor asserts that because it was not a creditor in Stanion's bankruptcy proceeding, it was not a party to the former adjudication. Stanion argues that because Ticor was named in motions made before the bankruptcy court it was a party in the prior adjudication.

In order for claim preclusion to apply, both proceedings must involve the same parties or their privies. *Foster*, 122 Idaho at 888, 841 P.2d at 418 (quoting *Andre v. Morrow*, 106 Idaho 455, 458 n.1, 680 P.2d 1355, 1358 n.1 (1984)). To be privies, a person not a party to the former action must "derive[] his interest from one who was a party to it, that is, . . . he [must be] in privity with a party to that judgment." *Id.* (quoting *Kite v. Eckley*, 48 Idaho 454, 459, 282 P. 868, 869 (1929)). This Court has held that registered creditors are in privity with a bankruptcy trustee and thus are subject to claim preclusion. *Shirey*, 126 Idaho at 68, 878 P.2d at 767.

does not support a claim that there is no distinction between an issue preclusion and claim preclusion analysis.

Ticor was not in privity with any party to the bankruptcy proceeding. Ticor was not a creditor in Stanion's bankruptcy proceeding and neither the bankruptcy trustee nor Stanion represented Ticor's interest. In fact its interests were adverse to both Stanion and the bankruptcy trustee; both wanted Ticor to pay the money in question to the bankruptcy trustee so that it could be distributed to Stanion's creditors. Thus, we must decide whether Ticor was a party to the procceding.

Stanion argues that Ticor was a party to the prior adjudication because it was a named party in motions made before the bankruptcy court. On August 4, 2004, the bankruptcy court ordered that Stanion's property be sold and that the title company handling the sale pay $650.00 to Stanion's attorney, $36,438.62 to the trustee, and the remainder of the sale proceeds to Stanion. Ticor's name does not appear anywhere in the order. It is unclear whether Ticor was aware of this order, and Ticor contends that there is no record that Ticor was then served with this order or made aware of its contents.[5] Nonetheless, the order and its contents are referenced in Stanion's December 2004 demand letter sent to Ticor.

Additionally, on February 1, 2005, Stanion made a motion to the bankruptcy court that Ticor turn over the required money to his attorney and to the bankruptcy trustee and that sanctions be awarded against Ticor. Ticor is not named as a party in that motion's caption, but is named in the actual motion. The hearing on that motion, at which Ticor did not appear, took place on March 11, 2005. In a subsequent motion to the bankruptcy court, Stanion asserted that Ticor was properly noticed of the March 11, 2005, hearing. The bankruptcy court granted Stanion's February 2005 motion to turn over funds and set a hearing regarding the sanctions.

Then, on March 23, 2005, Stanion filed an application for administrative expenses and sanctions against Ticor for its failure to appear at the March 11, 2005, hearing. Again, Ticor is not named in the caption but is named in the motion. Stanion asserts that this motion was served upon Ticor. There is a certificate of mailing showing that notice of the hearing's amended date to April 27, 2005, was sent to Ticor. Counsel

---

[5] However, as mentioned above, Ticor had already been engaged to handle the sale before this order was entered. *See infra* Part I.

for Ticor appeared at that hearing and signed an order finding that Ticor was now in compliance with the court order and that the matter was settled.

Ticor does not assert that it lacked notice of the above motions and orders. The record shows that Ticor was made aware of the August 2004 order by at least December 2004, upon receipt of Stanion's demand letter. According to Stanion's uncontroverted assertions, Ticor had notice of the two hearings on Stanion's motions. Finally, it is also clear that Ticor had notice of the April 2005 hearing as there is a certificate of mailing in the record and as Ticor's counsel actually appeared at the hearing. Ticor was the sole focus of the latter two motions and hearings.

The bankruptcy court had the power to subject Ticor to court orders pursuant to its voluntary participation as an escrow agent in Stanion's bankruptcy proceedings.[6] That court also held hearings specifically to determine whether Ticor was in compliance with its orders and whether Ticor should be sanctioned. The disbursement of sale proceeds was not the principal matter of Stanion's bankruptcy case, but was a collateral matter in the case that was presented to the court and resolved by the court.

Claim preclusion seeks to protect the courts against burdens of repetitious litigation and to protect individuals from the harassment of repetitive claims. Assuming as we must for purposes of summary judgment that Ticor did mistakenly pay Stanion the trustee's portion of the sale proceeds, it could and should have brought this to the attention of the bankruptcy court. The bankruptcy court could have resolved the matter by ordering Stanion to pay the amount in question to the trustee, thereby releasing Ticor from its court ordered obligation and giving it a defense to sanctions. Ticor's current suit

---

[6] The bankruptcy court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). When dealing with a post-confirmation case, a bankruptcy court will have "related to" jurisdiction if "there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 548 (9th Cir. 2006). "[M]atters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id*. Furthermore, a bankruptcy court has ancillary jurisdiction when it is necessary in order to vindicate its authority and effectuate its degrees. *Id*. at 549. Ticor's initial failure to pay the trustee affected the execution of the confirmed plan and violated the bankruptcy's court order regarding the distribution of sale proceeds.

against Stanion burdens our courts with issues that could have been resolved in the prior adjudication, when both of the same individuals here were involved in a hearing before a judge. Thus, because in the former adjudication Ticor was the subject of noticed motions and hearings that directly affected its interests, we hold that for the purposes of claim preclusion Ticor was a party to Stanion's bankruptcy proceedings.

### b. Same Claim

Claim preclusion bars adjudication not only on the matters offered and received to defeat the claim, but also as to "every matter which might and should have been litigated in the first suit." *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437, 849 P.2d 107, 110 (1993) (internal quotations and citations omitted). In other words, when a valid, final judgment is rendered in a proceeding, it "extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Id.* (quoting *Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 150, 804 P.2d 319, 323 (1990)). This Court has noted that the "transactional concept of a claim is broad" and that claim preclusion "may apply even where there is not a substantial overlap between the theories advanced in support of a claim, or in the evidence relating to those theories." *Id.* (quoting *Adalpe*, 105 Idaho at 259, 668 P.2d at 135). Whether a factual grouping constitutes a transaction is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Adalpe*, 105 Idaho at 259, 668 P.2d at 135).

Ticor argues that the prior proceeding exclusively settled only the discharge of Stanion's pre-petition debts and hence had nothing to do with Ticor's current claim of unjust enrichment, which arose post-petition. Ticor also asserts that its payment to Stanion and its payment to the trustee are two separate transactions. However, Ticor's present claim arises out of the same transaction addressed by the bankruptcy court in the prior adjudication: Ticor's disbursement of sale proceeds. In the prior proceeding, the bankruptcy court issued an order instructing the title company handling the sale of debtor's property as to how to disburse the sale proceeds. As a result of this order, Stanion brought motions asking the bankruptcy court to enforce that order and to sanction

Ticor for failing to properly disburse the sale proceeds and for failing to appear before the court.

In response to the motions to show cause why Ticor should not be ordered to pay the trustee and/or sanctioned, Ticor could have and should have responded that it already paid the amount in question to Stanion and/or it had no notice of the court's order that it pay $36,438.62 to the bankruptcy trustee. Thus, the operative underlying facts of the prior motions made in bankruptcy court and Ticor's present unjust enrichment claim against Stanion are the same. Both situations stem from the factual transaction of Ticor's agreement to handle the sale of Stanion's property and its overpayment of sale proceeds to Stanion. The transactional concept of claim is broad, *Magic Valley* 123 Idaho at 437, 849 P.2d at 110, and Ticor's overpayment to Stanion could have been litigated in the first suit. Hence, we hold the prior proceeding and the present proceeding involve the same claim.

### c. Final Judgment

The finality of judgment element does not require that the precise point or question in the present action be finally resolved in the prior proceeding. *Shirey*, 126 Idaho at 70, 878 P.2d at 769. This element requires that:

> [I]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Id.* (citations omitted).

There was a final judgment as to Stanion's bankruptcy proceeding, and after the sanction hearing at which Ticor appeared, the bankruptcy court entered an order stating that Ticor "is now in compliance and this matter is now settled." As discussed in the previous section, Ticor's present suit involves the same claim as in the prior proceeding. The issue of Ticor's overpayment to Stanion could and should have been litigated in the prior proceedings determining whether Ticor complied with the court's payment distribution order. Thus, we hold that the final resolution of the bankruptcy proceedings acted as a valid, final judgment as to Ticor's present claim against Stanion. In conclusion, because the prior bankruptcy proceedings resulted in a final judgment on the

10

same claim between the same parties as the present suit we affirm the district court's application of claim preclusion to Ticor's present suit against Stanion.

## C. Attorney Fees

Both Ticor and Stanion request attorney fees on appeal. Ticor, however, fails to accompany its request for attorney fees with a reference to any statutory provision authorizing the award. A party must point to a statute or contractual provision authorizing an award of attorney fees on appeal. *State ex. rel Wasden v. Daicel Chem. Indus., Ltd.*, 141 Idaho 102, 109, 106 P.3d 428, 435 (2005). Therefore, we decline to award attorney fees to Ticor.

Stanion argues that he is entitled to an award of attorney fees on appeal under I.C. § 12-121. That statute allows an award of "reasonable attorney's fees to the prevailing party. . . ." I.C. § 12-121. Attorney fees are awarded to the prevailing party only if "the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999). Ticor has not pursued this action frivolously or without foundation. Whether or not a title company involved in a bankruptcy proceeding, but not as a pre-petition creditor, is a party to the proceeding for purposes of claim preclusion is an issue of first impression. Thus, we decline to award Stanion attorney fees.

## III. CONCLUSION

We affirm the district court's grant of summary judgment in favor of Stanion because there is no issue of material fact and because Ticor's claim is barred by claim preclusion. We decline to award either party attorney fees. Costs to Respondent.

Justices TROUT and JONES, **CONCUR.**

Justice EISMANN, specially concurring.

Based upon the issues raised in this case, I concur in the majority opinion. I write only to explain that Ticor did not raise the issue of whether the bankruptcy court had subject matter jurisdiction to resolve its unjust enrichment claim against Stanion. From the record presented on appeal, it does not appear to me that it did. If it did not, then res judicata would not apply.

On October 3, 2003, Stanion filed for Chapter 13 bankruptcy protection in order to save his house from foreclosure. His Chapter 13 plan was confirmed on February 2,

2004, but he had difficulty making the payments due under the plan. He then decided to sell his house and pay all of the creditors' claims in full. On June 18, 2004, he entered into a contract to sell his house, and on August 4, 2004, the bankruptcy court approved the sale. Ticor was the closing agent. The court ordered that the closing agent pay $36,438.62 from the sale proceeds to the bankruptcy trustee, which sum would be used to pay in full all of the filed and allowed claims in Stanion's bankruptcy. The sale closed on August 20, 2004, and Ticor wired Stanion the entire net sale proceeds of $124,071.19, apparently under the assumption that he would forward the $36,438.62 to the trustee. He did not do so, and so the bankruptcy court ordered Ticor to turn over the funds that it had wrongly failed to send to the bankruptcy trustee. It ultimately did so, and then filed an action in state court to recover on a claim for unjust enrichment. From the record on appeal, it does not appear that the bankruptcy court would have had subject matter jurisdiction to resolve this state law claim.

Bankruptcy courts are courts of limited jurisdiction. "Title 28, section 1334(b) creates federal jurisdiction over 'civil proceedings arising under title 11 or arising in or related to a case under title 11.' Thus, for federal bankruptcy jurisdiction to exist, a case must at a minimum 'relate to' a case under title 11." *Community Bank of Homestead v. Boone*, 52 F.3d 958, 960 (11th Cir. 1995). A case does not relate to a case under title 11 merely because the cause of action arose from a transaction related to the bankruptcy.

In the *Community Bank* case, the Boones had entered into a contract to sell their house after defaulting on their home mortgage. They then filed for bankruptcy protection under Chapter 7 before closing the sale. Community Bank of Homestead (Bank) contended that a "dragnet clause" in the Boones' home mortgage made the house security for all debts the Boones owed the bank, including a debt owing on a personal guarantee the Boones had executed when obtaining a loan for a corporation they owned. When the Bank sent the closing agent an "estoppel letter" claiming that both debts were secured by the home mortgage, the Boones refused to close because they would not have received any proceeds from the sale of the house. The Boones then instituted a bankruptcy adversary proceeding against the Bank seeking: (1) a determination of the extent of the Bank's lien on their house; (2) an order compelling the Bank to accept that amount in satisfaction of its lien; and (3) compensatory and punitive damages against the Bank for

tortious interference with contract. The bankruptcy court rejected the Bank's challenge to its jurisdiction on the tortious interference claim and awarded the Boones $10,199 in compensatory damages and $30,596 in punitive damages on that claim. That judgment was vacated on appeal because the bankruptcy court lacked jurisdiction to resolve that claim.

In vacating the judgment, the appellate court stated, "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Community Bank of Homestead v. Boone*, 52 F.3d 958, 960 (11th Cir. 1995). The court then held that the Boone's tort claim could not conceivably affect their bankruptcy estate because the claim, arising post petition, was not property of the estate and the Bank did not have any nondischargeable, unsecured claim that would give it a claim of setoff. The court also held that the bankruptcy did not have jurisdiction over the tort claim merely because that claim shared common factual issues with a claim over which the bankruptcy court did have jurisdiction. "[A]lthough the claim to determine the extent of the Bank's lien and the tortious interference claim will share the common factual issue of the effect of the dragnet clause, this 'common issue[] of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b).'" *Id*. at 961 (quoting from *Miller v. Kemira, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990)). The court also noted that the claim would not affect the Boones' rights as bankruptcy debtors. "The role of debtor is defined by the panoply of rights and duties arising from the petition in bankruptcy; the outcome of the tortious interference claim will not alter those rights and duties in any way. Hence, '[t]o fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor.'" *Id*. (quoting from *Wood v. Wood*, 825 F.2d 90, 94 (5th Cir. 1987)).

The cause of action that Ticor seeks to assert against Stanion arose after Stanion had filed his petition in bankruptcy and after the approval of his Chapter 13 plan.[7] The claim arises under state law, not under the bankruptcy laws. It does not appear that the

---

[7] After Stanion sold his house, he filed an amended plan, which the bankruptcy court confirmed on July 13, 2005. The amended plan probably set forth his change in plans to pay all bankruptcy claims out of the sale proceeds.

cause of action would in any way impact the bankruptcy estate. Ticor is not seeking to recover from the bankruptcy estate the $36,438.62 it paid to the trustee. It is seeking to recover from Stanion the $36,438.62 that it inadvertently paid to him from the sale proceeds. The money received by Stanion is not part of the bankruptcy estate.

After the confirmation of a debtor's plan, the bankruptcy court may, by stating so in the order confirming the plan, explicitly retain jurisdiction over aspects of the plan related to its administration and interpretation. *Fairfield Communities, Inc. v. Daleske*, 142 F.3d 1093 (8th Cir. 1998). Ticor's cause of action against Stanion does not, on its face, appear to have anything to do with the administration and interpretation of the Chapter 13 plan. Stanion has not argued that Ticor's claim was discharged in the bankruptcy. All approved claims filed in Stanion's bankruptcy have been paid in full, and Stanion is entitled to keep the $124,071.19 he received. Any recovery that Ticor may have obtained in this case could not in any way affect Stanion's bankruptcy estate.

As a general rule, post-confirmation state law claims are not within the jurisdiction of the bankruptcy court. *Fairfield Communities, Inc. v. Daleske*, 142 F.3d 1093 (8th Cir. 1998). "[There is no reason] to protect the debtor from post-confirmation suits bottomed on claims arising after the entry of the order confirming the plan of arrangement." *Id*. at 1095 (quoting from *In re Morgan & Moran, Inc.*, 24 B.R. 518, 521 (S.D.N.Y. 1982)). Post-confirmation state law claims are generally not within the bankruptcy court's jurisdiction even when the conduct giving rise to the claim has interfered or could potentially interfere with the debtor's ability to carry out its obligations under the bankruptcy plan. *Eastland Partners Ltd. Partnership v. Brown*, 199 B.R. 917 (E.D. Mich. 1996). The bankruptcy court lacks subject matter jurisdiction even if the bankrupt's claim is based upon the postconfirmation breach of an existing contract that the bankrupt had assumed as part of its reorganization plan. *Craig's Stores of Texas, Inc. v. Bank of Louisiana*, 266 F.3d 388 (5th Cir. 2001).

Nevertheless, Ticor did not raise the issue of whether the bankruptcy court would have had subject matter jurisdiction to resolve Ticor's unjust enrichment claim against Stanion. Since that issue was not raised, I therefore join in the majority opinion.

Chief Justice SCHROEDER, **CONCURS.**

14