106 P.3d 428

STATE of Idaho, by and through Lawrence G. WASDEN, Attorney General and as parens patriae on behalf of persons residing in the State of Idaho, Plaintiff–Appellant–Cross Respondent,

v.

DAICEL CHEMICAL INDUSTRIES, LTD.; Hoechst Aktiengesellschaft; Nippon Gohsei a/k/a Nippon Synthetic Chemical Industry Co., Ltd.; Eastman Chemical Company; Nutrinova Nutrition Specialties & Food Ingredients, GMBH; and Ueno Fine Chemicals Industry, Ltd., Defendants–Respondents–Cross Appellants,

and

Aventis, S.A., Defendant.

No. 30379.

Supreme Court of Idaho, Boise, January 2005 Term.

Jan. 28, 2005.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Deputy Attorney General Brett T. Delange argued.

Blackburn & Jones, LLP, Boise, for respondents Daicel Chemical Industries, Ltd, Hoescht Aktiengesellschaft, Nippon Gohsei, Eastman Chemical Company, and Nutrinova Nutrition Specialties & Food Ingredients, GMBH. Rex Blackburn argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent Ueno Fine Chemicals Industry, Ltd did not participate in the appeal.

EISMANN, Justice.

The State appeals from a judgment dismissing its complaint on the ground that the Idaho Competition Act enacted in 2000 cannot be applied retroactively to create liability based upon conduct that occurred years before the Act was adopted. It also appeals the district court's order denying its motion to file an amended complaint to allege a claim under the Idaho Consumer Protection Act on the ground that the State's allegations of price fixing are not covered by that Act. We affirm the district court.

## I. FACTS AND PROCEDURAL HISTORY

The Defendants are all commercial producers of sorbates, which are antimicrobial agents used as preservatives in a wide variety of foods, beverages, and animal feed. During the period from 1998 through 2001, the United States Department of Justice indicted the Defendants Eastman Chemical Company (Eastman); Hoechst Aktiengesellschaft (Hoechst); Nippon Gohsei (Nippon); Daicel Chemical Industries, Ltd. (Daicel); and Ueno Fine Chemicals Industry, Ltd., (Ueno) for conspiring to fix sorbates prices. Each of those Defendants pled guilty and agreed to pay a multimillion-dollar criminal fine. The Defendant Nutrinova Nutrition Specialties & Food Ingredients, GmbH, (Nutrinova) was a wholly owned subsidiary of Hoechst.[1] Each of the Defendants except Eastman was incorporated in, and had its principal place of business in, a foreign country.

On January 6, 2003, the State filed this action under the Idaho Competition Act, I.C. §§ 48–101 et seq. It alleged that from 1979 to 1997, the Defendants had engaged in a conspiracy to suppress competition by fixing the price on sorbates in the United States and elsewhere. The State sought to recover damages on behalf of Idaho businesses and consumers who had purchased sorbate-containing products at artificially high prices due to the conspiracy.

On May 14, 2003, the Defendants Hoechst, Nutrinova, Daicel, and Nippon moved to dismiss the complaint as to them for the lack of personal jurisdiction. Those Defendants and Eastman also moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

After the motions were argued, the district court issued its memorandum decision on November 4, 2003. It denied the motion to dismiss for lack of personal jurisdiction, holding that they had waived the defense of lack of jurisdiction when they voluntarily appeared in the action. The court granted the motion to dismiss on the ground that the State's complaint failed to state a claim upon which relief could be granted. It held that the Idaho Competition Act, which took effect on July 1, 2000, did not apply retroactively to permit the recovery of damages based upon conduct occurring from 1979 to 1997. Finally, the district court denied the State's motion to file an amended complaint under the Idaho Consumer Protection Act, I.C. § 48–601 et seq., on the ground that price-fixing was not prohibited by that Act.

After the district court issued its memorandum opinion, the State served Ueno with process. Based upon the stipulation of the parties, on January 5, 2004, the district court ordered that its prior ruling would apply to Ueno also. On January 12, 2004, the district court entered a judgment dismissing this action, and the State timely appealed. The Defendants Daicel, Hoechst, Nippon, and Nutrinova timely filed a cross-appeal, indicating that they were cross-appealing the district judge's order holding that they consented to the jurisdiction of the court by appearing in the action. They have not pursued their cross-appeal.

## II. ISSUES ON APPEAL

A. Did the district court err in dismissing the complaint alleging a claim under the Idaho Competition Act?

B. Did the district court err in denying the State's request to amend its com-

---

1. The Defendant Aventis, S.A., was the successor-in-interest of Hoechst Aktiengesellschaft and was voluntarily dismissed by the State without prejudice on March 3, 2003.

plaint to allege a claim under the Idaho Consumer Protection Act?

C. Is either party entitled to an award of attorney fees on appeal?

### III. ANALYSIS

#### A. Did the District Court Err in Dismissing the Complaint Alleging a Claim Under the Idaho Competition Act?

By its complaint filed on January 6, 2003, the State sought to recover damages against the Defendants under the Idaho Competition Act (ICA), Idaho Code §§ 48–101 *et seq.,* on the ground that they conspired to fix the price of sorbates. The alleged conspiracy existed from 1979 through 1996. The Defendants moved to dismiss on the ground that the ICA was enacted in 2000, and that applying it to the conspiracy at issue would constitute an impermissible retroactive application of the Act in violation of Idaho Code § 73–101. That statute provides, "No part of these compiled laws is retroactive, unless expressly so declared." The district court agreed, and granted the motion to dismiss.

■ The State argues that the legislature impliedly stated that the ICA should be applied retroactively. It relies upon Idaho Code § 48–108(2), which authorizes the State to bring an action on behalf of Idaho residents to recover damages "for injury directly or indirectly sustained by those persons." The State reasons that the word "sustained" indicates a legislative intent to allow the State to recover damages incurred prior to the enactment of the ICA because on the date that the ICA took effect only damages incurred prior to the Acts effective date would have been "sustained."

■ Idaho Code § 73–101 provides, "No part of these compiled laws is retroactive, *unless expressly so declared.*" (Emphasis added.) As this Court stated in *Gailey v. Jerome County,* 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987), "Thus, in Idaho, a statute is not applied retroactively unless there is 'clear legislative intent to that effect.' In the absence of an express declaration of legislative intent that a statute apply retroactively, it will not be so applied." (Internal citations omitted.) In *Unity Light & Power Co. v.*

*City of Burley,* 92 Idaho 499, 445 P.2d 720 (1968), this Court addressed whether the legislature had expressly declared a statute to be applied retroactively. The enactment provided, "This act shall be in full force and effect from and after June 1, 1963." Ch. 269, § 5, 1963 Idaho Sess. Laws 685, 689. In holding that the legislature had not expressly declared the act to be retroactive, this Court stated, "The legislature, in setting the effective date of the new statute, demonstrated an intent that it not be given retrospective effect." 92 Idaho at 504, 445 P.2d at 725.

The legislature declared that the ICA "shall be in full force and effect on and after July 1, 2000." Ch. 148, § 5, 2000 Idaho Sess. Laws 377, 385. Not only did the legislature not expressly declare that the ICA would be applied retroactively, but its express statement as to when the law would take effect demonstrated that the Act was not to be given retrospective effect.

■ The State next argues that the ICA is purely remedial legislation that can be applied retroactively. This Court has stated, "A statute that is procedural or remedial and does not create, enlarge, diminish or destroy contractual or vested rights is generally held not to be a retroactive statute, even though it was enacted subsequent to the events to which it operates." *Bryant v. City of Blackfoot,* 137 Idaho 307, 313, 48 P.3d 636, 642 (2002). In this context, a statute is remedial if it does not create, enlarge, diminish or destroy any substantive rights, but merely alters the remedy available for enforcing pre-existing rights.

By its complaint, the State was seeking to recover damages sustained by persons residing in this state who indirectly purchased sorbates from any of the Defendants. Indirect purchasers are those who did not purchase sorbates directly from any of the Defendants, but rather purchased sorbates or sorbate-containing products from entities in the supply chain that were not associated with any of the Defendants. The direct purchasers of sorbates from the Defendants have recovered in class-action litigation prosecuted in California. The State argues that because price-fixing was prohibited by the

former Idaho Antitrust Act (repealed effective July 1, 2000), the application of the ICA to this case is simply remedial. It merely provides a remedy—an action by the Attorney General to recover damages—for conduct that had already been declared illegal under the former Idaho Antitrust Act (IAA).

■ The validity of the State's argument hinges upon whether indirect purchasers could recover damages under the IAA. If indirect purchasers could not recover damages under the IAA, then the provision of the ICA that permits the State to recover damages on behalf of indirect purchasers is clearly not merely remedial legislation, as that term is used when deciding whether a statute can be applied retroactively. It creates a cause of action to recover damages where none previously existed. The creation of a right to recover damages is not merely remedial legislation even if the conduct upon which the right to recover is based had previously been declared wrongful. "Damages and punishments are substantive law." *Grover v. Isom*, 137 Idaho 770, 774, 53 P.3d 821, 825 (2002). *Accord, Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 722, 449 P.2d 378, 382 (1968) ("[M]atters relating to the measure of damages are said to be substantive rather than procedural.").

The IAA was adopted in 1911. The first section (last codified as I.C. § 48–101) provided, "That every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this State, is hereby declared to be illegal." Ch. 215, § 1, 1911 Idaho Sess. Laws 688. Section 14 of the Act (last codified as I.C. § 48–114) allowed any person whose business or property was injured by a violation of the Act to recover treble damages. Ch. 215, § 14, 1911 Idaho Sess. Laws 688, 693.

■ The terms "contract," "combination," and "conspiracy" in Section 1 of the IAA can be used interchangeably. They require an agreement between two or more actors. *K. Hefner, Inc. v. Caremark, Inc.*, 128 Idaho 726, 918 P.2d 595 (1996). "There are three essential elements in every private antitrust action: (1) a violation of the antitrust law, (2) direct injury to the plaintiff from such violations, and (3) damages sus-

tained by the plaintiff." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 233, 646 P.2d 988, 1004 (1982). The focus of the State's argument is upon the second requirement mentioned in *Pope:* direct injury to the plaintiff from the antitrust violation.

■ In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the United States Supreme Court held that the Sherman Antitrust Act did not permit indirect purchasers to recover damages for an antitrust violation. Although not binding upon us, federal decisions interpreting those portions of the federal act are persuasive because Sections 1 and 14 of the IAA were patterned after Sections 1 and 7 of the Sherman Antitrust Act. *K. Hefner, Inc. v. Caremark, Inc.*, 128 Idaho 726, 918 P.2d 595 n. 1 (1996); *Afton Energy, Inc. v. Idaho Power Co.*, 122 Idaho 333, 834 P.2d 850 (1992); *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 n. 11 (1982). We are not persuaded that we should reject *Pope* and hold that the IAA permitted the recovery of damages by indirect purchasers. The *Pope* court's statement of the elements for a private antitrust cause of action is consistent with the requirement of former Idaho Code § 48–101 that the contract, combination, or conspiracy in restraint of trade must be "within this state." Although the statute applied to such combinations or conspiracies formed or operating in this state, it did not apply to such combinations or conspiracies formed and operating outside this state that only indirectly affected persons within this state.

Finally, the State argues that it is not attempting to recover damages for indirect purchasers. It is simply seeking the forfeiture of property under Section 3 of the IAA (last codified as I.C. § 48–103). That statute provided, "Any property owned under any contract or by any combination, or pursuant to any conspiracy, and being the subject thereof, mentioned in the foregoing sections of this chapter, shall be forfeited to the state." Ch. 215, § 3, 1911 Idaho Sess. Laws 688, 689. We need not address the merits of

the State's argument in this regard because its complaint alleging a violation of the ICA cannot reasonably be construed as a complaint seeking the forfeiture of property under the former IAA.

**B. Did the District Court Err in Denying the State's Request to Amend Its Complaint to Allege a Claim Under the Idaho Consumer Protection Act?**

After the Defendants moved to dismiss the complaint, the State moved to amend its complaint to add a claim under the Idaho Consumer Protection Act (ICPA), I.C. §§ 48–601 *et seq.* The district court denied the motion to amend, holding that the State could not state a claim under the ICPA.

Although a motion to amend a complaint must be freely given when justice so requires, I.R.C.P. 15(a), a trial court can deny the motion if the new claim proposed to be inserted in the amended complaint fails to state a valid claim, *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 804 P.2d 900 (1991). Thus, the issue is whether the State could state a valid claim under the ICPA.

First, the State argues that because price-fixing violates the Federal Trade Commission Act (FTCA) and that "due consideration and great weight" are to be given to the interpretation of that Act when interpreting the ICPA, I.C. § 48–604, we must hold that

the ICPA allows the State to recover damages for price-fixing. The State's argument ignores the differences between the FTCA and the ICPA.

In *Federal Trade Commission v. Pacific States Paper Trade Ass'n*, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534 (1927), the United States Supreme Court held that price-fixing violated the FTCA. In *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), the Supreme Court held that price fixing could violate both the FTCA and the Sherman Antitrust Act. The relevant portion of the FTCA provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. 45(a)(1). The FTCA does not further define what constitutes unfair methods of competition. Unlike the FTCA, the ICPA defines what constitutes an unfair method of competition. Idaho Code § 48–603 begins, "The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows or in the exercise of due care should know, that he has in the past, or is:" The statute then lists nineteen types of conduct that constitute either an unfair method of competition or an unfair or deceptive act or practice.[2] There is nothing in the wording of Idaho Code § 48–603 indicating that the list

---

2. Idaho Code § 48–603 provides:

**48–603. Unfair methods and practices.—** The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is:

(1) Passing off goods or services as those of another;

(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Using deceptive representations or designations of geographic origin in connection with goods or services;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredi-

ents, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;

(6) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparaging the goods, services, or business of another by false or misleading representation of fact;

(9) Advertising goods or services with intent not to sell them as advertised;

(10) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

of conduct is merely illustrative. Price-fixing is not listed in § 48–603 as conduct that constitutes either an unfair method of competition or an unfair or deceptive act or practice. The legislative intent that we give due consideration and great weight to the interpretation given the FTCA by federal courts only applies when we are construing a provision of the federal law that is similar to that in our Act.

The State contends that the ICPA can be construed to cover price fixing. Idaho Code § 48–603(18) prohibits "[e]ngaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48–603C, Idaho Code." The latter statute provides as follows:

**48–603C. Unconscionable methods, acts or practices.**—(1) Any unconscionable method, act or practice in the conduct of any trade or commerce violates the provisions of this chapter whether it occurs before, during, or after the conduct of the trade or commerce.

(2) In determining whether a method, act or practice is unconscionable, the following circumstances shall be taken into consideration by the court:

(a) Whether the alleged violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement or similar factor;

(b) Whether, at the time the consumer transaction was entered into, the alleged violator knew or had reason to know that the price grossly exceeded the price at which similar goods or services were readily available in similar transactions by similar persons, although price alone is insufficient to prove an unconscionable method, act or practice;

(c) Whether the alleged violator knowingly or with reason to know, induced the consumer to enter into a transaction that was excessively one-sided in favor of the alleged violator;

(d) Whether the sales conduct or pattern of sales conduct would outrage or

(12) Obtaining the signature of the buyer to a contract when it contains blank spaces to be filled in after it has been signed;

(13) Failing to deliver to the consumer at the time of the consumer's signature a legible copy of the contract or of any other document which the seller or lender has required or requested the buyer to sign, and which he has signed, during or after the contract negotiation;

(14) Making false or misleading statements of fact concerning the age, extent of use, or mileage of any goods;

(15) Promising or offering to pay, credit or allow to any buyer or lessee, any compensation or reward in consideration of his giving to the seller or lessor the names of prospective purchasers or lessees, or otherwise aiding the seller or lessor in making a sale or lease to another person, if the earning of the rebate, discount or other value is contingent upon the occurrence of an event subsequent to the time the buyer or lessee agrees to buy or lease;

(16) Representing that services, replacements or repairs are needed if they are not needed, or providing services, replacements or repairs that are not needed;

(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer;

(18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48–603C, Idaho Code, provided, however, that the provisions of this subsection shall not apply to a regulated lender as that term is defined in subsection (37) of section 28–41–301, Idaho Code;

(19) Taking advantage of a disaster or emergency declared by the governor under chapter 10, title 46, Idaho Code, or the president of the United States under the provisions of the disaster relief act of 1974, 42 U.S.C. section 5121 et seq., by selling or offering to sell to the ultimate consumer fuel or food, pharmaceuticals, or water for human consumption at an exorbitant or excessive price; provided however, this subsection shall apply only to the location and for the duration of the declaration of emergency. In determining whether a price is exorbitant or excessive, the court shall take into consideration the facts and circumstances including, but not limited to:

(a) A comparison between the price paid by the alleged violator for the fuel, food, pharmaceuticals, or water and the price for which the alleged violator sold those same items to the ultimate consumer immediately before and after the period specified by the disaster or emergency declaration;

(b) Additional costs of doing business incurred by the alleged violator because of the disaster or emergency;

(c) The duration of the disaster or emergency declaration.

Notwithstanding anything to the contrary contained elsewhere in the act, no private cause of action exists under this subsection.

offend the public conscience, as determined by the court.

The State contends that price fixing constitutes conduct which would "outrage or offend the public conscience," and is therefore prohibited by Idaho Code § 48–603C(2)(d).

The interpretation of a statute is a question of law over which we exercise free review. *Gooding County v. Wybenga,* 137 Idaho 201, 46 P.3d 18 (2002). It must begin with the literal words of the statute, *Thomson v. City of Lewiston,* 137 Idaho 473, 50 P.3d 488 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole without separating one provision from another. *State v. Hart,* 135 Idaho 827, 25 P.3d 850 (2001). Subsections (a), (b), and (c) of § 48–603C(2) describe specific types of conduct, while subsection (d) is more general. Where a statute contains specific terms followed by a general term, the latter will typically be regarded as referring to things of a like class to those particularly described in order to determine legislative intent. *Washington Water Power Co. v. Kootenai Envtl. Alliance,* 99 Idaho 875, 591 P.2d 122 (1979).

The first three subsections of § 48–603C(2) refer to conduct that is directed at the consumer and is designed to exploit a particular weakness or disadvantage. The unconscionable conduct specifically addressed is taking advantage of a consumer who is "reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement or similar factor"; charging the consumer a price that "grossly exceeded the price at which similar goods or services were readily available in similar transactions by similar persons"; and inducing the consumer to enter into a transaction that was "excessively one-sided in favor of the alleged violator."

The circumstance described in the final subsection is "[w]hether the sales conduct or pattern of sales conduct would outrage or offend the public conscience, as determined by the court." When construed in the context of the first three subsections, this subsection is designed to prohibit unconscionable "sales conduct" that is directed at the consumer. The manner in which the alleged violator conducted consumer sales would outrage or offend the public conscience. The State has not presented any argument as to how the price fixing alleged in this case constitutes "sales conduct" as used in Idaho Code § 48–603C(2)(d), nor has it cited any authority so holding. There is no contention that any of the Defendants sold sorbates to consumers in Idaho. The district court did not err in denying the State's motion to amend its complaint.

## C. Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The State seeks an award of attorney fees on appeal pursuant to Idaho Code §§ 48–108(1)(d) and 48–112 of the ICA. Because its complaint alleging a violation of that Act was properly dismissed, the State is not entitled to an award of attorney fees under that Act. It also requests attorney fees under Idaho Code §§ 48–606(1)(f) and 48–607 of the ICPA. Because it does not have a claim under that Act, the State is not entitled to an award of attorney fees under it.

The Defendants also request attorney fees on appeal. In their brief, they state: "To the extent Defendants/Respondents prevail on this appeal, this Court should issue an award of attorney fees and other costs of appeal in their favor. *See* Idaho Rule of Appellate Procedure 41." We have repeatedly held that a reference to Rule 41 is not sufficient by itself to properly request an award of attorney fees on appeal. *Bream v. Benscoter,* 139 Idaho 364, 79 P.3d 723 (2003). The requesting party must point to a statute or contractual provision authorizing such award. Therefore, the Defendants are not entitled to an award of attorney fees on appeal.

## IV.  CONCLUSION

The judgment of the district court is affirmed. Costs on appeal, but not attorney fees, are awarded to the Defendants.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.