127 P.3d 138

DAN WIEBOLD FORD, INC., an Idaho corporation, Plaintiff–Appellant,

v.

UNIVERSAL COMPUTER CONSULTING HOLDING, INC., Universal Computer Services, Inc., Universal Computer Systems, Inc., Universal Computer Consulting Ltd, and Dealer Computer Services, Inc., Defendants–Respondents.

No. 31136.

Supreme Court of Idaho, Boise, December 2005 Term.

Dec. 22, 2005.

David E. Kerrick, Caldwell, and Blume & Stoddard, Dallas, Texas, for appellant. James D. Blume argued.

Holland & Hart, Boise, for respondents. Steven C. Bowman argued.

EISMANN, Justice.

This is an appeal from a judgment dismissing a complaint alleging violations of the Idaho Consumer Protection Act on the ground that the parties had entered into a contract that included a provision requiring them to arbitrate disputes between them. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On April 20, 1993, Dan Wiebold Ford, Inc., (Dan Wiebold) entered into a written contract (Agreement) with Ford Dealer Computer Services, Inc., (FDCS), under which FDCS agreed to provide Dan Wiebold with computer hardware and software and software support services. The parties amended the Agreement over sixty times to provide for computer hardware and software changes, and they agreed to extend its term beyond the initial seven years. On July 29, 2003, Dan Wiebold filed this action to recover damages for alleged violations of the Idaho Consumer Protection Act, I.C. §§ 48–601 *et seq.*, and to have the Agreement declared terminated. It named as defendants Dealer Computer Services, Inc., (DCS), which had acquired FDCS in 1992 and had entered into the Agreement under the name of FDCS; Universal Computer Consulting Holding, Inc., (UCCH), which was the parent company of DCS; and Universal Computer Systems, Inc., (UC Systems), Universal Computer Consulting, Inc., (UC Consulting), and Universal Computer Services, Inc., (UC Services) which had contracted with DCS to provide the computer equipment, software, and support services required under the Agreement.

The Defendants attempted unsuccessfully to have the case removed to the federal district court. The federal court remanded it back to the state court because of uncertainty as to whether the amount in controversy exceeded the jurisdictional requirement of $75,000.

On January 20, 2004, after the case had been remanded back to state court, the Defendants moved to compel arbitration pursuant to the terms of the Agreement and to have the complaint dismissed with prejudice. Dan Wiebold responded by moving to file an amended complaint which would add a claim alleging that the arbitration provision in the Agreement is unconscionable and should therefore be declared void.

The district court heard both motions on May 24, 2004. The Defendants did not object to the request to file the amended complaint, and it was filed on June 14, 2004.

On August 2, 2004, the district court issued a memorandum decision in which it determined that the arbitration clause in the Agreement was valid and that all claims alleged in Dan Wiebold's complaint were sub-

ject to arbitration. The district court dismissed this action, and Dan Wiebold then timely appealed.

## II. ISSUES ON APPEAL

A. Does this Court have jurisdiction to hear this appeal?

B. Did the district court err in holding that the arbitration clause was not unconscionable?

C. Does the arbitration clause apply to claims alleged under the Idaho Consumer Protection Act?

D. Does the arbitration clause apply to the Defendants who did not sign the Agreement?

E. Should the district court be reversed on the ground that the time for requesting arbitration under the contract has expired?

F. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Does this Court Have Jurisdiction to Hear this Appeal?

■ The first issue we must address is the Defendants' claim that we do not have jurisdiction to hear this appeal. They contend that appeals under the Idaho Uniform Arbitration Act are governed by Idaho Code § 7–919 [1] and that such statute does not grant the right to appeal from orders compelling arbitration. They also argue that an order compelling arbitration is not a final judgment under Idaho Appellate Rule 11, and therefore it is not appealable. We need not address this Court's jurisdiction granted by Article V, § 9, of the Idaho Constitution "to review, on appeal, any decision of the district courts, or the judges thereof." Although its order may have the effect of compelling Dan Wiebold to

1. That statute provides:
 (a) An appeal may be taken from:
 (1) An order denying an application to compel arbitration made under section 7–912, Idaho Code;
 (2) An order granting an application to stay arbitration made under section 7–902(b), Idaho Code;
 (3) An order confirming or denying confirmation of an award;

commence arbitration if it desires to pursue its claims, the district court did not compel Dan Wiebold to participate in arbitration. It dismissed its lawsuit. The district court's order stated:

### *ORDER*

IT IS HEREBY ORDERED, and this DOES ORDER, pursuant to the Federal Arbitration Act, the Plaintiff's claims against all Defendants are subject to arbitration.

IT IS FURTHER ORDERED, and this DOES ORDER, that this matter is hereby DISMISSED.

A district court's order dismissing a lawsuit is a final judgment which can be appealed. *Castle v. Hays,* 131 Idaho 373, 957 P.2d 351 (1998). Therefore, this Court has jurisdiction to hear this appeal.

### B. Did the District Court Err in Holding that the Arbitration Clause Was Not Unconscionable?

■ The district court based its analysis of the arbitration clause upon the Federal Arbitration Act. It did not have the benefit of our opinion in *Moore v. Omnicare, Inc.,* 141 Idaho 809, 118 P.3d 141 (2005). The parties' Agreement provides that it "shall be governed by the laws of the State of Michigan." Therefore, Michigan law governs the validity of the arbitration clause and its scope. *Id.*

■ Under Michigan law, an arbitration provision in a contract is valid and enforceable unless there are grounds that exist at law or in equity to rescind or revoke that provision. Mich. Comp. Laws § 600.5001(2). Unconscionability is one of the traditional defenses under Michigan law to the enforcement of a contractual provision. *Rory v. Continental Ins. Co.,* 473 Mich. 457, 703

 (4) An order modifying or correcting an award;
 (5) An order vacating an award without directing a rehearing; or
 (6) A judgment or decree entered pursuant to the provisions of this act.
 (b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

N.W.2d 23 (2005). Unconscionability is a question of law for the court to decide. *Northwest Acceptance Corp. v. Almont Gravel, Inc.*, 162 Mich.App. 294, 412 N.W.2d 719 (1987). For a contractual provision to be unconscionable, it must be both procedurally and substantively unconscionable. *Id.*

A contract or contractual provision is procedurally unconscionable when the weaker party had no realistic alternative to acceptance of the contract or provision. *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 706 N.W.2d 471 (2005). To be substantively unconscionable under Michigan law, the inequality of the term must be so extreme as to shock the conscience. *Id.* It is not substantively unconscionable simply because it is foolish for one party and very advantageous to the other. *Id.*

In response to the Defendants' motion, Dan Wiebold offered the affidavit of its founder and owner H.D. Wiebold. In finding that Dan Wiebold had failed to show procedural unconscionability, the district court reasoned as follows:

> The Affidavit of Dan Wiebold contains only one statement relating to the unconscionability claim: "At no time did Mr. Bunney or any other representative of Defendant DCS, f/k/a FDCS, ever discuss, review, or explain the arbitration provision with me." DCS's failure to offer unsolicited explanations to the arbitration provision is not a factor indicating unconscionability.

> The Plaintiff has not presented evidence concerning Mr. Wiebold's business experience, or lack thereof, in 1993, or representations made by DCS/Ford Dealer Services, Inc., at the time of contracting, or the relative bargaining powers of the parties. However, it is undisputed that in 1993, Mr. Wiebold owned a dealership for a multinational automotive manufacturer. Generally, such dealerships have resources for working through legal matters such as contract negotiations. Furthermore, such dealerships sell automobiles to their customers under contracts of sale, which typically contain provisions in fine print, and often contain arbitration provisions. In 1993, having owned a Ford dealership for approximately twenty years, Mr. Wiebold had considerable experience with contracts for sale of goods and services. Business persons having comparable experience and resources would not undertake contractual obligations without understanding the consequences of doing so. The Plaintiff has failed to provide sufficient evidence from which this Court can find the arbitration provision procedurally unconscionable. (Citations omitted.)

Dan Wiebold did not offer evidence that it had no realistic alternative to purchasing the computer equipment, software, and software support services from DCS, or that comparable equipment and software could not be obtained elsewhere. On the first page of the Agreement, prior to the recitation of any terms, was the following notice: "THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER APPLICABLE STATUTE." Even if the Agreement is one of adhesion, that is not a relevant factor when determining procedural unconscionability under Michigan law. *Clark v. DaimlerChrysler Corp.*, 268 Mich.App. 138, 706 N.W.2d 471 (2005). The district court did not err in holding that Dan Wiebold had failed to show that the arbitration clause in the Agreement was procedurally unconscionable.

The district court also found that the Agreement was not substantively unconscionable. Having upheld the district court's finding on procedural unconscionability, we need not address the district court's finding that the arbitration provision was not substantively unconscionable. Because both are required to find unconscionability under Michigan law, the lack of one factor precludes a finding of unconscionability.

## C. Does the Arbitration Clause Apply to Claims Alleged Under the Idaho Consumer Protection Act?

Dan Wiebold's amended complaint alleges various claims under the Idaho Consumer Protection Act (ICPA). The district court found that such claims were within the scope of the Agreement's arbitration clause, which provides:

> Except as provided otherwise in this Agreement, all disputes, claims, controver-

sies and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement, or to the breach thereof, including any claim in which either party is demanding monetary damages of any nature including negligence, strict liability or intentional acts or omissions by either party, and which cannot be resolved by the parties, shall be settled by arbitration in accordance with the arbitration procedure described below. Under Michigan law, the question of whether a dispute is arbitrable is for the court's determination. *Kentwood Public Schools v. Kent County Educ. Ass'n*, 206 Mich.App. 161, 520 N.W.2d 682 (1994). A contracting party who would exclude a matter from a general arbitration clause in the contract must do so expressly and explicitly. *Kaleva–Norman–Dickson School Dist. No. 6 v. Kaleva–Norman–Dickson School Teachers' Ass'n*, 393 Mich. 583, 227 N.W.2d 500 (1975). The arbitration clause in a contract will apply to any dispute that is arguably within the scope of the clause, and any doubts about the arbitrability of an issue should be resolved in favor of arbitration. *Watts v. Polaczyk*, 242 Mich.App. 600, 619 N.W.2d 714 (2000). The court's inquiry is limited to whether the issue is arguably within the scope of the arbitration clause. *Kentwood Public Schools v. Kent County Educ. Ass'n*, 206 Mich.App. 161, 520 N.W.2d 682 (1994). Under Michigan law, statutory claims can be subject to arbitration even when the arbitration clause does not expressly mention statutory claims. *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich.App. 118, 596 N.W.2d 208 (1999).

The arbitration clause in the Agreement is very broad. It includes "all disputes, claims, controversies and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement, ... including any claim in which either party is demanding monetary damages of any nature...." That language is broad enough to include claims under the ICPA.

Dan Wiebold contends that requiring arbitration of its ICPA claims would contravene public policy because it would be denied the opportunity to seek class relief and injunctive relief. It has not sought either of those forms of relief in this lawsuit. There is nothing in the ICPA expressly prohibiting arbitration of claims brought under that Act. The issue is whether, under Michigan law, such claims are subject to arbitration.

In support of its argument, Dan Wiebold relies upon *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F.Supp.2d 1087 (W.D.Mich. 2000). In that case, a federal district judge held that an arbitration provision was substantively unconscionable under Michigan law because it waived class remedies and failed to grant the arbitrator authority to provide injunctive relief, both of which were expressly available under the Michigan Consumer Protection Act. The *Lozada* opinion is not persuasive for several reasons.

First, as mentioned above, a contractual provision can be held unconscionable under Michigan law only if it is both procedurally and substantively unconscionable. That portion of the *Lozada* opinion upon which Dan Wiebold relies held that the arbitration agreement in that case was substantively unconscionable. That holding is irrelevant to this case because Dan Wiebold failed to clear the first hurdle of showing that the Agreement was procedurally unconscionable.

Second, the arbitration clause at issue in *Lozada* expressly excluded class relief with a provision stating, "The arbitration shall not be consolidated with any other arbitration." The arbitration clause in the parties' Agreement in this case does not exclude class relief, and Dan Wiebold has not provided any authority showing that such relief is unavailable through arbitration. Likewise, it has failed to provide any authority showing that Dan Wiebold could not obtain injunctive relief through arbitration.

Third, as the Michigan Supreme Court has noted, the decisions of lower federal courts are not binding on state courts, even on issues of federal law. *Abela v. General Motors Corp.*, 469 Mich. 603, 677 N.W.2d 325 (2004). Such decisions are authoritative only if the reasoning is persuasive. The judge in *Lozada* stated, "Michigan courts will conclude that the contract is adhesive and therefore procedurally unconscionable." 91

F.Supp.2d at 1100. He failed to accurately predict how the Michigan courts would rule on that issue. In *Rory v. Continental Insurance Co.*, 473 Mich. 457, 703 N.W.2d 23 (2005), the Michigan Supreme Court upheld a provision in an automobile insurance policy that required the insured to file a claim or lawsuit for uninsured motorist benefits within one year from the date of the accident, even though the insurance policy was an adhesion contract. After reviewing and rejecting the doctrine that adhesion contracts are subject to close judicial scrutiny, the Michigan Supreme Court concluded, "Therefore, we hold that it is of no legal relevance that a contract is or is not described as 'adhesive.' In either case, the contract is to be enforced according to its plain language." 703 N.W.2d at 42. In reliance upon the *Rory v. Continental Insurance Co.* opinion, the Michigan Court of Appeals in *Clark v. DaimlerChrysler Corp.*, 268 Mich.App. 138, 706 N.W.2d 471 (2005), held that it could not even consider whether a contract was one of adhesion when determining if it was procedurally unconscionable. The judge in *Lozada* was unable to predict accurately how the Michigan Supreme Court would rule on issues relating to substantive unconscionability, and there is no reason to believe he could accurately predict how Michigan courts would rule on the issue of whether claims under the Michigan Consumer Protection Act are subject to arbitration.

Finally, the Michigan Court of Appeals has held that the strong public policy favoring arbitration would justify denying class certification. In *Salesin v. State Farm Fire & Casualty Co.*, 229 Mich.App. 346, 581 N.W.2d 781 (1998), the trial court granted summary judgment in favor of the plaintiff and then summarily denied his request for class certification without a hearing. The Court of Appeals vacated the denial because the trial court had denied the requested certification without explanation and apparently without considering the five factors listed in a rule of civil procedure that govern a trial court's discretion regarding class certification. One of the factors was, "(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of

justice." The court noted that while State Farm had waived arbitration in the pending case, it may not do so with respect to the claims asserted by other members of the proposed class. It then stated that the trial court could deny class certification based upon factor (e) "because maintenance of a class action in the trial court would not be superior to settling disputes between State Farm and other insureds by means of arbitration. In this regard, we note that Michigan law favors arbitration." 581 N.W.2d at 793.

Dan Wiebold has not pointed to a single opinion from the Michigan courts holding that claims under the Michigan Consumer Protection Act are not subject to arbitration. Michigan courts have enforced arbitration of claims under that Act, *Amtower v. William C. Roney & Co.*, 232 Mich.App. 226, 590 N.W.2d 580 (1999); *Bennett v. Shearson Lehman-American Express, Inc.*, 168 Mich. App. 80, 423 N.W.2d 911 (1987), although the issue raised by Dan Wiebold here was not raised in those cases. There is no reason to believe, however, that under Michigan law Dan Wiebold's claims asserted under the ICPA would be held not subject to arbitration.

**D. Does the Arbitration Clause Apply to the Defendants Who Did Not Sign the Agreement?**

 Dan Wiebold contends that it cannot be required to arbitrate its claims against UCCH, UC Systems, and UC Consulting, and UC Services because none of them signed the Agreement between it and DCS. A nonsignatory can be bound to an arbitration agreement under ordinary principles of contract and agency. *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir.1995). For example, in *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.*, 129 Cal.App.4th 759, 28 Cal.Rptr.3d 752 (Cal.Ct.App.2005), the court held that a signatory's agent was entitled to enforce an arbitration clause.

 Under Michigan law, arbitration agreements must be in writing, but there is no requirement that they be signed by either

or both parties. *Ehresman v. Bultynck & Co., P.C.,* 203 Mich.App. 350, 511 N.W.2d 724 (1994). The district court correctly noted that Dan Wiebold's "claims against Defendants UC Services, UC Systems, and UC Consulting arose from those Defendants performing DCS's obligations under the 'Agreement.'" The district court considered these entities as having acted as DCS's agents, and therefore entitled to enforce the arbitration clause in the Agreement. The district court also noted that UCCH was apparently named solely because it was DCS's parent corporation. The district court held that UCCH, as DCS's principal, was also covered by the arbitration provision. We believe that the district court's holding was consistent with how Michigan courts would have resolved the issues.

In *Beaver v. Cosmetic Dermatology & Vein Centers of Downriver, P.C.,* No. 253568, 2005 WL 1968171 (Mich.Ct.App.2005) (unpublished opinion), the plaintiff brought an action against a corporation and its owner because the owner had allegedly engaged in tortious conduct when he touched her against her will in order to discipline her for her work performance while in the business setting. The plaintiff had signed an employment contract with the corporation which required arbitration of disputes that arose out of or were related to her employment. The trial court refused to enforce the arbitration clause, and the defendants appealed. The appellate court reversed, holding that her claims were within the scope of the arbitration clause and that the arbitration clause was applicable to the owner, even though he had not signed the employment contract. The court held that because the owner was acting as an agent of the corporation when he disciplined the plaintiff, her claims against him were subject to the arbitration agreement she signed with the corporation.

In *Burgher v. Dansey,* No. 842505, 2004 WL 842505 (Mich. Ct.App. April 20, 2004) (unpublished opinion), the plaintiffs had purchased a home from the Danseys, who had purchased it from the defendant. The defendant obtained a court order compelling arbitration based upon its written agreement with the Danseys. The plaintiffs appealed, arguing that they were not bound by that arbitration agreement because they had not signed it. The Michigan court disagreed, noting that they had contacted the defendant expecting it to fix the problems with the home, they had alleged that the defendant owed them a duty that arose out of its contract with the Danseys, and they had alleged violations of the Michigan Consumer Protection Act which would only apply if they considered themselves consumers of the defendant's services.

In *Conseco Finance Servicing Corp. v. Erickson,* No. 241234, 2003 WL 22717940 (Mich. Ct.App. Nov.18, 2003) (unpublished opinion), a wife contended that she was not bound by the arbitration clause in an installment sales contract signed by her husband for the purchase of a mobile home. The court disagreed, holding that where she purchased the home with her husband, moved into it with him, and requested repairs and made claims under the installment sales contract, she had acceded to its terms, including the arbitration provision.

In *AAA Pharmacy, Inc. v. Value Rx Pharmacy Program, Inc.,* No. 207155, 1999 WL 33430011 (Mich.Ct.App. Nov.16, 1999) (unpublished opinion), the plaintiff brought an action against the defendants for libel, invasion of privacy, tortious interference with economic relations, injurious falsehood, violations of the Michigan Consumer Protection Act, and violations of the Uniform Trade Practices Act. The plaintiff had entered into a contract with Value RX Pharmacy Program, Inc., (Value RX Pharmacy) to become an affiliated pharmacy in a prescription-drug program. That contract included an arbitration clause, and the lawsuit arose out of the termination of the contract. The plaintiff also named as defendants the parent corporation of Value RX Pharmacy and a man employed by both corporations. The trial court held that all of the plaintiff's claims were covered by the arbitration clause, and the plaintiff appealed. The appellate court affirmed, holding that the parent corporation and the employee were covered by the arbitration clause under ordinary contract and agency principles, even though neither of

them had signed the contract containing that clause.

In *Woodworth, Inc. v. Five Pointes Construction, Inc.*, No. 2002875, 1998 WL 1989560 (Mich.Ct.App.1998) (unpublished opinion), the plaintiff had entered into a contract with a corporation which included a provision requiring arbitration of any disputes between the plaintiff and the corporation. The plaintiff later sued the corporation and its president, and the trial court dismissed on the ground that the plaintiff's claims were barred by the arbitration agreement. On appeal, the plaintiff contended that the corporation's president was not a party to the arbitration agreement. The appellate court disagreed, stating, "If plaintiff can avoid the practical consequences of the agreement to arbitrate by naming nonsignatory parties as a defendant, or signatory parties in their individual capacities only, the effect of the arbitration agreement would effectively be nullified." *Id.* at 2.

In *Ankenbrandt v. Bay City Country Club*, NO. 190902, 1997 WL 33353545 (Mich.Ct. App. March 14, 1997) (unpublished opinion), the plaintiff had entered into an employment contract with a country club which included a clause requiring arbitration of any controversy or claim arising out of the agreement. After the plaintiff was fired, he filed for arbitration and filed a civil lawsuit against two members of the country club's board of directors. He alleged that the two men had interfered with his contractual relations with the club and that one of them had defamed him in the club's monthly newsletter. The arbitrators decided the tort claims, and the trial court held they had authority to do so. On appeal, the plaintiff alleged that his claims against the two men could not be subject to arbitration because they had not signed the employment contract. The appellate court disagreed, holding that the claims related to their representation of the club as its president and general manager and their participation in the decision of the board of directors to fire the plaintiff.

Even though the above are unpublished opinions, we find them persuasive as to how the Michigan courts would decide the issue of whether Dan Wiebold's claims against UCCH, UC Systems, and UC Consulting, and UC Services are subject to the arbitration clause in the Agreement. Dan Wiebold has not cited any Michigan authority to the contrary.

**E. Should the District Court Be Reversed on the Ground that the Time for Requesting Arbitration Under the Contract Has Expired?**

█ In its reply brief, Dan Wiebold argues that the order of dismissal must be reversed because the time period within which to demand arbitration has expired. The arbitration clause of the Agreement includes a provision stating, "In no event shall the demand for arbitration be made more than one (1) year after the claim or cause of action arises." Dan Wiebold asserts that because no timely request for arbitration was made, its claims must be litigated in court.

█ Under Michigan law, arbitrators, rather than courts, are to decide the application of potential defenses to arbitration such as contractual limitation periods, statutes of limitation, and the doctrine of laches. *Amtower v. William C. Roney & Co.*, 232 Mich. App. 226, 590 N.W.2d 580 (1999); *Bennett v. Shearson Lehman–American Express, Inc.*, 168 Mich.App. 80, 423 N.W.2d 911 (1988). Whether or not either party failed to demand arbitration within one year after the claim or cause of action arose is for the arbitrators to decide. Likewise, the arbitrators must also decide the consequences, under Michigan law, of any failure to make a timely demand.

**F. Is Either Party Entitled to an Award of Attorney Fees on Appeal?**

Dan Wiebold requests an award of attorney fees on appeal pursuant to Idaho Code § 48–608. That section provides for an award of attorney fees to a plaintiff only if the plaintiff prevails. Because Dan Wiebold has not prevailed on this appeal, it is not entitled to an award of attorney fees under that section.

█ The Defendants seek an award of attorney fees on appeal "pursuant to Idaho Appellate Rule 41." "We have repeatedly held that a reference to Rule 41 is not suffi-

cient by itself to properly request an award of attorney fees on appeal." *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.,* 141 Idaho 102, 109, 106 P.3d 428, 435 (2005). Therefore, the Defendants are not entitled to an award of attorney fees on appeal.

## IV. CONCLUSION

We affirm the judgment of the district court. We award costs on appeal, excluding attorney fees, to the Defendants.

Chief Justice SCHROEDER and Justices TROUT and BURDICK concur.

JONES, Justice., specially concurring.

I agree with the Court's opinion, but write to comment upon a curious argument made by Dan Wiebold, which is dealt with in Part III.E. Dan Wiebold argues that DCS waited too long to demand arbitration, therefore the arbitration agreement expired, therefore Dan Wiebold may pursue its claims against the Defendants in court. The argument references the arbitration provision of the Agreement, which requires a demand for arbitration to be made no later than one year after the claim or cause of action arises, and the limitations provision, which states that no action arising out of transactions under the Agreement may be brought by either party more than one year after the cause of action has occurred. Apparently, the assumption is that, if a demand for arbitration is not made within the one year period in the arbitration provision, the arbitration provision expires and either party can then bring their case to court. No authority is cited for this novel contention. Further, Dan Wiebold has pointed to no place on the record where this Court can determine when a demand for arbitration was made or exactly what was demanded. According to the argument, the demand was made somewhat more than a year after the district court entered its order from which the appeal was taken. Dan Wiebold can hardly expect relief on an argument where it provides neither a citation to the factual basis in the record, nor legal authority to support its argument.

The Defendants have consistently contended that Dan Wiebold's claims must be re-solved through arbitration in accordance with the terms of the Agreement. At oral argument, counsel for Defendants stated that they will proceed with arbitration as per their demand. Dan Wiebold is not without a remedy, provided it pursues that to which the parties agreed.